UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cr-20677-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RICHARD SHELLEY,

    Defendant.
_____/

### ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

**THIS CAUSE** is before the Court upon Defendant Richard Shelley's *pro se* Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1) Based on Medical Conditions (the "Motion"). ECF No. [194]. The Government filed its Response in Opposition. *See* ECF No. [197]. The Court has reviewed the Motion; pertinent portions of the record, including Defendant's disciplinary record, [ECF No. 197-1], sealed medical records, ECF Nos. [199-1], [199-2]; the Government's Response, the Defendant's Reply, ECF No. [203], and Notice of Filing Additional Support Letter and Document, ECF No. [204]; the applicable law, and is otherwise fully advised. After consideration, the Court **DENIES** the Motion for the reasons set forth herein.

    **I.**    **BACKGROUND**

Defendant is currently serving a twenty-year sentence for attempting to possess with intent to distribute 500 or more grams of cocaine. *See* ECF No. [112]. His projected release date according to the Bureau of Prisons ("BOP") is October 17, 2031. *Find an Inmate*, Fed. Bureau Prisons, https://www.bop.gov/inmateloc (last visited Nov. 21, 2024) (search BOP Register Number: 08494-104).

Defendant was charged in 2015 with three counts in a six-count Indictment that also charged his two co-Defendants, Everton Minott and N'Namdi Gibson. ECF No. [1]. The charges stemmed from a reverse sting operation in which a Hialeah Police Department confidential informant ("CI") arranged to sell cocaine to Defendant. *See* Factual Proffer of Everton Minott, ECF No. [60]. Minott pled guilty and was sentenced to 120 months' imprisonment. ECF No. [111]. Defendant and Gibson proceeded to trial and on December 10, 2015, Defendant was convicted of one of the three counts (Count 2), while Gibson was acquitted of all charges. ECF Nos. [84], [86]. On February 9, 2016, Defendant was sentenced to twenty years' imprisonment followed by five years of supervised release. ECF No. [112]. While his direct appeal was pending, Defendant moved for a new trial based on newly discovered evidence, which the Court denied. ECF Nos. [143], [144]. On January 8, 2019, the Eleventh Circuit affirmed Defendant's conviction and sentence and the denial of his motion for new trial. *United States v. Shelley*, 760 F. App'x 657 (11th Cir. 2019).

Defendant then filed numerous post-conviction motions, including a letter requesting compassionate release, ECF No. [172], and a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, ECF No. [175]. The Court denied the compassionate release request on October 13, 2020, ECF No. [178], and denied the motion to vacate on September 9, 2021, ECF No. [179].

On July 26, 2024, Defendant filed instant Motion, which again seeks compassionate release. ECF No. [194]. Defendant argues he is entitled to compassionate release because (1) he has serious medical conditions that cannot adequately be treated in prison; (2) his sentence is unreasonably long; and (3) he has demonstrated rehabilitation during his incarceration and is a low recidivism risk. Defendant also filed a letter from his fiancé stating she was diagnosed with cancer in 2019. ECF No. [204]. The Government opposes compassionate release, arguing primarily that

(1) Defendant's medical conditions are not serious, and he has refused certain treatments offered in prison; (2) his prison disciplinary record and failure to participate in certain academic programs show a lack of rehabilitation; and (3) he remains a danger to the community as evidenced by the facts of his offense and his extensive criminal history. ECF No. [197]. In Reply, Defendant maintains that his refusal of certain treatments is due to the inadequate care offered by the BOP, and the Government has misrepresented his prison disciplinary and academic record. ECF No. [203]. The Government concedes that Defendant has exhausted his administrative remedies.[1] ECF No. [197] at 5.

## II.   LEGAL STANDARD

A "court may not modify a term of imprisonment once it has been imposed except" in certain circumstances established by statute or rule. 18 U.S.C. § 3582(c); *see United States v. Giron*, 15 F.4th 1343, 1345 (11th Cir. 2021). One of those circumstances is known as "compassionate release." *Giron*, 15 F.4th at 1345. In determining whether to grant compassionate release, courts must consider three factors. First, "extraordinary and compelling reasons" must warrant a sentence reduction. § 3582(c)(1)(A)(i); *see also United States v. Harris*, 989 F.3d 908, 909–10 (11th Cir. 2021). "Extraordinary and compelling reasons" are those listed by the U.S. Sentencing Commission's policy statement, U.S.S.G. § 1B1.13. *See United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021).[2] Second, the court must consider the sentencing factors listed in 18 U.S.C. § 3553(a) to the extent they apply. § 3582(c)(1)(A). And third, any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."

---

[1] Courts may consider a compassionate release motion only after the defendant has fully exhausted his administrative remedies with the BOP. 18 U.S.C. § 3582(c)(1)(A); *United States v. Lee*, 848 F. App'x 872, 874 (11th Cir. 2021).

[2] Defendant argues that the Court may consider reasons not listed in the policy statement, but the Eleventh Circuit has rejected that argument in *Bryant*.

§ 3582(c)(1)(A); *see United States v. Handlon*, 97 F.4th 829, 831–32 (11th Cir. 2024). If the court finds against the movant on any one of these requirements, it cannot grant compassionate release, and it need not address the other requirements. *Giron*, 15 F.4th at1347–48.

### III. DISCUSSION

#### A. Defendant Has Not Shown "Extraordinary and Compelling Reasons" for Compassionate Release

Defendant's primary argument is that his "severe medical conditions" constitute "extraordinary and compelling reasons" for compassionate release. ECF No. [194] at 8. Under the United States Sentencing Commission's policy statement, the following "medical circumstances of the defendant" can qualify as "extraordinary and compelling reasons" justifying compassionate release: (A) the defendant is suffering from a terminal illness; (B) the defendant has a serious physical condition or cognitive impairment or is experiencing deteriorating health from the aging process and such condition, from which he is not expected to recover, substantially diminishes his ability to provide self-care in prison; (C) the defendant needs long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration of health or death; and (D) the defendant's facility is experiencing an outbreak of infectious disease, the defendant is at high risk of severe illness from that disease, and such risk cannot be mitigated in a timely manner. U.S.S.G. § 1B1.13(b)(1)(A)–(D).

Defendant is 39 years old, and he asserts that his medical conditions "require specialized and continuous medical care, which he cannot adequately receive while incarcerated." ECF No. [194] at 8–9. Specifically, Defendant states that he underwent an echocardiogram ("EKG") on April 16, 2021, which revealed a "moderate global ventricular dysfunction and mild mitral and tricuspid valve regurgitation." *Id*. at 9. According to Defendant, this means "his heart is not functioning properly, leading to reduced blood flow and potential heart failure." *Id*. Defendant

claims he has also been "diagnosed with hyperlipidemia, a condition characterized by high levels of lipids in the blood, further exacerbating his cardiac issues." *Id*. Defendant contends that his heart condition "necessitates regular monitoring, timely medical interventions, and possibly advanced treatment that the current incarceration setting is ill-equipped to provide." *Id*.

The Government responds that Defendant has failed to produce medical records to support his claims. ECF No. [197] at 4. The Government further contends that Defendant's medical records reveal that his conditions are not serious, and that he has refused certain treatments offered in prison. *Id*. at 1–2. The Government notes that, according to Defendant's medical records, he has "asymptomatic cardiomyopathy and high cholesterol," and "[a]bout 71 million Americans have high cholesterol." ECF No. [197] at 10. The Government avers that Defendant's medical records show "he has successfully managed his 'asymptomatic' and 'unremarkable' heart condition under the BOP's care since at least 2018." *Id*. at 1. The Government also notes that, with respect to his high cholesterol, Defendant's "medical records show he has refused to take medication such as statins to improve his condition," and he refused a blood test for heart muscle damage after complaining of chest pain. *Id*. at 5–6. According to the Government, Defendant's medical records show he has been consistently treated by cardiologists and that he "has had normal/unremarkable cardiovascular test results[.]" *Id*. at 6.

In Reply, Defendant contends that his refusal to take certain medications and undergo certain tests is due to his "concerns about side effects and the institution's delayed response to his medical needs[.]" ECF No. [203] at 11. He claims that he has been scheduled for follow-up treatments and tests that have not yet taken place. *Id*. at 12–13. He argues that the medical records produced by the Government do not "fully capture the reality of his daily struggles with medication side effects and inadequate medical support," although Defendant has not filed any medical

records of his own. *Id*. at 13. Defendant points to a "broader crisis within the BOP" concerning systemic staffing shortages that cause the medical needs of prisoners to go unaddressed. *Id*. at 11–12. In short, Defendant claims that the medical treatment within the BOP is inadequate, yet he also acknowledges that he has refused treatments offered to him.

Defendant is not entitled to compassionate release. It is unreasonable for Defendant to insist, on the one hand, that his condition is so severe, and his medical care is so inadequate, that he is entitled to compassionate release, while on the other hand refuse the treatments offered to him. *See United States v. Gianelli*, 533 F. Supp. 3d 45, 47 (D. Mass. 2021) ("Although defendant has the right to refuse medical treatment, this Court will not reward such refusal to protect himself with a get-out-of-jail card"); *United States v. Zambrano*, No. 18-cr-2002, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them."). Though Defendant may have legitimate concerns about the side effects of medication, that does not explain his refusal to take medical tests.

Moreover, Defendant has not substantiated his claim that the prison medical care is inadequate. Even if he had, he has not produced any medical records showing that his conditions meet the parameters of the United States Sentencing Commission's policy statement. *See United States v. Mesa*, No. 22-11361, 2022 WL 17851985, at *2 (11th Cir. Dec. 22, 2022) ("Mesa has not shown that any of his [conditions] are terminal, so debilitating that they substantially diminish his ability to provide self-care in prison, or that they are not manageable in prison. Nor has Mesa substantiated his claims of inadequate medical care."). Crucially, Defendant has provided no evidence demonstrating that he suffers from a medical condition "that substantially diminishes

[his] ability . . . to provide self-care" in prison. U.S.S.G. § 1B1.13(b)(1)(B). Rather, the medical records produced by the Government demonstrate that Defendant's medical conditions do not qualify as extraordinary and compelling reasons for compassionate release. *See* ECF Nos. [199-1], [199-2]; *see also Giron*, 15 F.4th at 1346 (finding that the defendant's high cholesterol, high blood pressure, and coronary artery disease were not extraordinary and compelling); *United States v. Diaz-Rosado*, No. 21-10834, 2023 WL 2129555, at *4 (11th Cir. Feb. 21, 2023) (affirming denial of compassionate release because "Defendant did not provide evidence to substantiate his claim to have severe or chronic kidney disease, and the medical records submitted by the Government tend to disprove that claim"). Indeed, Defendant seems to concede that his conditions are manageable. While he contends that he has voluntarily refused the prison's treatment options based on his fear of "inconsistent and delayed care," he acknowledges that he is "manag[ing] his condition" with diet and exercise. ECF No. [203] at 13–14. The Government points out that Defendant "exercises every day by jumping rope." ECF No. [197] at 10.

Furthermore, to the extent Defendant seeks compassionate release based on inadequate medical care in prison more broadly, a compassionate release motion is not the proper vehicle to raise such a claim. Inadequate treatment—absent a sufficiently serious medical condition—is not an extraordinary and compelling reason for compassionate release. *See United States v. Hernandez-Miranda*, No. 21-13178, 2022 WL 1113122, at *2 n.6 (11th Cir. Apr. 14, 2022) ("To the extent that Hernandez-Miranda seeks to challenge his conditions of confinement, including alleged inadequate medical care, § 3582(c) is not the proper vehicle to do so. Rather, such claims are properly raised in a civil rights action under 42 U.S.C. § 1983"); *United States v. Shell*, No. 21-13591, 2022 WL 2733369, at *3 (11th Cir. July 14, 2022) ("Shell's claim that the Bureau mistreats inmates does not convert concededly managed medical conditions into 'extraordinary

and compelling' reasons for release. A compassionate release motion is an improper vehicle for raising constitutional claim."). In sum, Defendant's medical circumstances do not qualify as "extraordinary and compelling reasons" for compassionate release.

Additionally, Defendant maintains that his "unusually long sentence" of twenty years is an extraordinary and compelling reason. ECF No. [194] at 10–12. But the provision of the United States Sentencing Guidelines' policy statement to which he refers provides that "[i]f a defendant received an unusually long sentence *and has served at least 10 years of the term of imprisonment*, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason. . . ." U.S.S.G. § 1B1.13(b)(6) (emphasis added). Defendant has not yet served over ten years of imprisonment, so this provision does not apply to him.

Finally, Defendant has filed a letter from his fiancé, along with her medical records, stating that she was diagnosed with cancer in 2019 and that Defendant took care of her prior to his incarceration. ECF No. [204]. To be sure, "family circumstances of the defendant" is an "extraordinary and compelling reason" for compassionate release, and one of those circumstances is "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13(b)(3)(B). But Defendant does not allege that his fiancé is incapacitated or that he is her only available caregiver, nor does she indicate as such in her letter. *See United States v. Guyton*, 859 F. App'x 435, 438 (11th Cir. 2021) ("Guyton failed to show his mother's health condition was an extraordinary and compelling reason for his release, as he did not allege she was incapacitated").

Accordingly, Defendant has not shown "extraordinary and compelling reasons" for compassionate release, and his Motion is due to be denied on that basis. But, as explained below,

even if Defendant could demonstrate extraordinary and compelling reasons, his Motion would still be denied based on the other factors the Court must consider.

### B. The 18 U.S.C. § 3553(a) Factors Weigh Against Release

Section 3553(a) sets forth the factors district courts should consider when imposing a sentence: (1) the details of the offense and the characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, and protect the public; (3) the kinds of sentences available; (4) the relevant Sentencing Guidelines; (5) relevant policy statements; (6) the need to avoid unwarranted sentence disparities among similar defendants; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). Generally, district courts have discretion over the weight they give to these factors and need not discuss each factor or even state on the record that they have explicitly considered each factor. *United States v. Kuhlman*, 711 F.3d 1321, 1326–27 (11th Cir. 2013).

Defendant argues that his "severe, debilitating, and potentially life-threatening medical condition," coupled with his unreasonably long sentence, tilt the § 3553(a) factors in his favor. ECF No. [194] at 13–18. He also argues that the Court improperly calculated his guideline range, although this argument was already rejected by the Eleventh Circuit on direct appeal. *See Shelley*, 760 F. App'x at 664 (11th Cir. 2019) ("The district court properly calculated Shelley's guideline range because it did not err in attributing four kilograms of cocaine to Shelley or applying a two-level firearm possession enhancement."). In addition, Defendant contends that his post-sentencing rehabilitation, as shown by his engagement in various programs, "demonstrate[s] a profound and sustained commitment to personal transformation since his original sentencing." ECF No. [194] at 15. Defendant further argues that his BOP PATTERN score places him at a "low risk" to reoffend. *Id*. at 17. Lastly, he argues that his familial support warrants consideration. *Id*. at 21.

The Government responds that Defendant has not demonstrated post-sentencing rehabilitation, as he "continues to commit crimes while incarcerated, including bribing prison officials and possessing drugs and other contraband." ECF No. [197] at 1. The Government lists seven disciplinary infractions that Defendant has been charged with since 2017. *See* Gov.'s Ex. 1, ECF No. [197-1]. The Government also notes that Defendant has failed to participate in recommended academic courses. ECF No. [197] at 12. Moreover, the Government highlights the seriousness of Defendant's crime, pointing out that the undercover detective testified he was more concerned for his safety than usual because Defendant was armed and did not bring the agreed-upon amount of cash to the transaction, and Defendant provided law enforcement with a fake name and a forged identification document upon arrest. *Id*. at 3. The Government points to Defendant's extensive criminal history, noting he "has been arrested at least eleven (11) times, for offenses ranging from grand theft, weapons possession, possession of fraudulent identification documents, and drug trafficking." *Id*. at 4 (citing PSI ¶¶ 3, 31–41).

Defendant replies that the courses he failed to complete were not offered at his institution. ECF No. [203] at 9. He further argues that his disciplinary record should not be considered because "there is no proof" that he committed any of the charged infractions. *Id*. at 2. Defendant attempts to explain why he is innocent of one of his more recent charges, and he argues generally that he has not been afforded due process in his disciplinary hearings. *Id*. He contends that the disciplinary record submitted by the Government contains no details about his infractions, making it "impossible to assess the nature and severity of the alleged offenses." *Id*. at 3.

Although Defendant disputes the validity of his disciplinary record, it is a valid factor this Court may consider in its § 3553(a) analysis. *See United States v. Denson*, 859 F. App'x 453, 456 (11th Cir. 2021) (finding that district court did not abuse its discretion in considering the

defendant's seven disciplinary violations as part of its § 3353(a) analysis). Furthermore, Defendant concedes in his Reply that the BOP "is in the best position to determine the seriousness of prison misconduct" and can subtract good time credits for misconduct. ECF No. [203] at 5–6. Of course, granting compassionate release would defeat the purpose of reducing Defendant's time credits.

In any event, even without considering Defendant's disciplinary record, the details of his offense, his characteristics (including his extensive criminal history), and the need to avoid unwarranted sentencing disparities weigh against a sentence reduction. As the Eleventh Circuit observed in affirming Defendant's sentence as substantively reasonable, "attempting to possess four kilograms of cocaine is a serious offense, especially when bringing firearms to the transaction." *Shelley*, 760 F. App'x at 666. The Eleventh Circuit further noted that Defendant was the leader who "helped instigate and facilitate" the drug transaction, and he was therefore more culpable than his co-defendant Minott, who pled guilty and received ten years. *Id*. To grant compassionate release would permit Defendant to serve a shorter sentence than Minott, which would contravene the purposes of § 3553(a). Lastly, Defendant's Presentence Investigation Report ("PSI") detailed his extensive criminal history, which is a factor that weighs strongly against a sentence reduction. *See United States v. Tinker*, 14 F.4th 1234, 1241 (11th Cir. 2021) (finding that the district court properly "emphasized Tinker's extensive criminal history and the need to protect the public" when addressing the § 3553(a) factors). In sum, the § 3553(a) factors do not support compassionate release.

### C. Release Would Be Inconsistent with the Applicable Policy Statement

The U.S. Sentencing Commission's applicable policy statement on compassionate release requires that the defendant "not be a danger to the safety of any other person or to the community." *United States v. Handlon*, 97 F.4th 829, 832 (11th Cir. 2024) (quoting U.S.S.G. § 1B1.13(a)(2)).

When determining the potential danger posed by a defendant, courts consider: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger that would be posed by the defendant's release. 18 U.S.C. § 3142(g). These factors therefore overlap with the § 3553(a) factors. *See United States v. Joseph*, No. 86-CR-00322-RAR, 2022 WL 1913247, at *7 (S.D. Fla. May 16, 2022) ("Because both Section 3142(g) and Section 3553(a) include overlapping considerations, the Court considers them together.").

The Government argues that "Defendant's extensive criminal history, his armed drug trafficking in the instant case, and his continued disregard for the law (even while in prison)," all support a finding that he remains a danger to the community. ECF No. [197] at 11–12. This Court agrees. A district court's "discretion in weighing sentencing factors is particularly pronounced when it comes to weighing criminal history." *United States v. Riley*, 995 F.3d 1272, 1279 (11th Cir. 2021). Defendant's lengthy criminal history combined with the facts of his offense—which included firearms and tens of thousands of dollars' worth of narcotics—show that he presents a danger to the public. *See United States v. Willhite*, No. 21-10441, 2022 WL 424817, at *2 (11th Cir. Feb. 11, 2022) (finding that the facts of defendant's drug trafficking offense, which included 1.5 kilograms of methamphetamine and three firearms, along with his prior drug-trafficking conviction, supported a finding of dangerousness). And while Defendant's disciplinary record in prison and his continued refusal to take responsibility for his crime do not by themselves indicate dangerousness, they do suggest a lack of rehabilitation.

## IV. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that Defendant's Motion for Compassionate Release, **ECF No. [194]**, is **DENIED**.

Case No. 15-cr-20677-BLOOM

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 25, 2024.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of record

Richard Shelley
08494-104
Beaumont Low
Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 26020
Beaumont, TX 77720
PRO SE